UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JADO ASSOCIATES, LLC and VINCENT DICANIO,
Individually and on behalf of all the DiCanio Entities
mentioned in the Complaint,

                        Plaintiffs,                    **MEMORANDUM AND ORDER**
                                                           CV-12-3011 (DRH)(ARL)

       -against-

SUFFOLK COUNTY SEWER DISTRICT NO. 4-
SMITHTOWN GALLERIA, THE SUFFOLK COUNTY
SEWER AGENCY, THE COUNTY OF SUFFOLK, THE
SUFFOLK COUNTY DEPARTMENT OF HEALTH
SERVICES, THE SUFFOLK COUNTY DEPARTMENT OF
PUBLIC WORKS, SMITHTOWN GALLERIA
ASSOCIATES LIMITED PARTNERSHIP,
CARRABBA'S/MID-ATLANTIC-1 LIMITED
PARTNERSHIP, and NORTH COUNTRY BBQ VENTURE
(SMITHTOWN), LLC n/k/a FAMOUS DAVE'S RIBS, INC.,

                        Defendants.
-------------------------------------------------------------------X

**APPEARANCES:**

**EGAN & GOLDEN, LLP**
Eugene L. Wishod, Esq.
*Attorneys for Plaintiffs*
96 South Ocean Avenue
Patchogue, New York 11772

**ASSISTANT COUNTY ATTORNEY**
Jennifer K. McNamara, Esq.
*Attorneys for the County Defendants*
100 Veterans Memorial Highway
Hauppauge, New York 11788

**CERTILMAN BALIN ADLER & HYMAN, LLP**
Glenn B. Gruder, Esq.
*Attorneys for Defendant Smithtown Galleria*
*Associates Limited Partnership*
100 Motor Parkway, Suite 156
Hauppauge, New York 11788

**HURLEY, Senior District Judge:**

Jado Associates, LLC and Vincent DiCanio ("plaintiffs") bring this action pursuant to 42 U.S.C. § 1983, the Takings Clause of the Fifth Amendment of the United States Constitution, and the Due Process Clause of the Fourteenth Amendment of the United States Constitution against the County of Suffolk and its agencies ("Municipal defendants"). Plaintiffs also assert pendant state law claims against the Municipal defendants and defendant Smithtown Galleria Associates ("Avalon") for breach of contract and unjust enrichment.

Presently before the Court are the Municipal defendants' motion to dismiss and defendant Avalon's motion to dismiss, both brought pursuant to various subsections of Rule 12 of the Federal Rules of Civil Procedure specified in the text below. For the reasons set forth below, the Municipal defendants' motion is denied in part and granted in part, and Avalon's motion is granted.

## BACKGROUND

The following facts are taken from the allegations in the Complaint and are assumed to be true for purposes of this motion.

### *Parties*

Plaintiff, Jado Associates, LLC ("Jado"), is a limited liability company organized and existing under the laws of the State of New York with its principal place of business in the County of Suffolk. Plaintiff, Vincent DiCanio ("DiCanio") is a principal of Jado and the other DiCanio entities discussed below. Defendant, Suffolk County Sewer District No. 4- Smithtown Galleria (the "Sewer District"), is a sewer district established on December 21, 2004 pursuant to Article 5-A of the New York State County Law and Resolution No. 1403-2007 of the Suffolk County Legislature. The Sewage Treatment Plant ("STP") discussed in this action is located

within the Sewer District. Defendants the Suffolk County Sewer Agency (the "Sewer Agency"), Suffolk County Department of Health Services ("SCDHS"), and Suffolk County Department of Public Works ("DPW") are all agencies of the County of Suffolk, (the "County"), a municipal corporation. Defendant Smithtown Galleria Associates Limited Partnership ("Avalon") is a Connecticut Limited Partnership and a wholly owned subsidiary of Avalonbay Communities. Defendants Carrabba's/Mid-Atlantic-1, Limited Partnership ("Carrabba's") and North Country BBQ Ventures (Smithtown), LLC n/k/a Famous Dave's Ribs, Inc. ("Famous Dave's") (collectively "the Restaurants") have been dismissed from this action.

### *Operative Facts*

#### *A. The 1990 Construction Agreement*

On November 20, 1990, DiCanio Residential Communities, Inc., Smithtown Galleria Corp. and Galleria Environmental Corp., all DiCanio entities, (collectively "the owners") entered into an Agreement (the "1990 Agreement") with the Sewer Agency, DPW, and the County that obligated the owners to build a sewage treatment plant ("STP") and sewage collection system (the "Collection System") to service 81 acres of land that the owners intended to develop into a planned community of apartments, single-family residence dwellings, and commercial establishments. The 1990 Agreement is the only agreement the County or any of the municipal defendants ever signed for the construction of the STP and Collection System.

#### *B. Land Transfer Agreement*

On April 5, 1994 the owners entered into a Land Transfer Agreement (the "Transfer Agreement") with Avalon. The Transfer Agreement provided that Avalon would construct the STP "only to service its Project on Phase I," which consisted of developing 312 apartments and a Clubhouse/Amenities area. According to plaintiffs, Avalon also agreed to "design the STP and

procure approvals for an STP capable of serving Phases II through VI of the project," which consisted of the development of condominiums, office buildings, commercial/retail buildings, and one-family and two-family homes. The agreement also stated that Phases I through VI of the project, "shall be granted hookup to the Plant without any fees or charges imposed by [Avalon] or its successors or assigns."

In violation of the Transfer Agreement, Avalon collected sewer connection fees totaling $135,886.50 from the DiCanio entities involved in developing Phases IV, V, and VI.[1] Exhibit G to the Complaint, a letter from plaintiffs' attorney to Avalon's former counsel, provides more specifics as to the fees collected. According to Exhibit G, Avalon entered into three connection agreements with the DiCanio entities developing a CVS Pharmacy, "Kinder Care" facility, and thirteen single-family homes, executed on November 30, 1998, December 27, 1999, and May 1, 2001, respectively, each providing that the connection fee was due "upon execution" of the agreement.

### C. Establishment of the Sewer District

Pursuant N.Y. County Law § 256, a county may establish a sewer district, thereby taking ownership of an STP if "it is in the public interest to establish the district." In June of 2002, the Sewer Agency prepared a report for the proposed formation of the Sewer District containing the STP in question, which contained a proposed budget showing an estimated residential user fee of $470.00 per year. On December 21, 2004, the Suffolk County Legislature (the "Legislature") adopted Resolution No. 1403, which was approved by the Suffolk County Executive (the "County Executive") on December 27, 2004 and thereafter by the State Comptroller, thereby

---

[1] According to Exhibit G of the Complaint, a letter from plaintiffs' attorney to Avalon's former counsel, there was disagreement between the parties as to whether a subsequent 1996 agreement between DiCanio entities and Avalon entitled Avalon to collect connection fees.

establishing the Sewer District. The County thereafter, upon the recommendation of its Budget Office, refused to transfer title to the land occupying the STP to the Sewer District because it found that the proposed budget omitted "spread costs," which increased the estimated residential sewer rate to $1,020 per year. The new proposed rate was 500% more than residential customers were paying under Avalon's private ownership of the STP.

### D. Temporary Septic Systems

On November 8, 2001 Jado, as landlord, and Carrabba's, as tenant, entered into a Lease (the "Carrabba's Lease") covering premises located in the Galleria Corner Shopping Center ("Galleria Corner") located in Smithtown, New York, pursuant to which Carrabba's agreed to construct a 7,000 square foot building to be operated as a restaurant. The Carrabba's Lease provided that Carrabba's would pay a fee in the amount of $112,500 to connect to the STP and Collection System. On November 5, 2003, Jado, as landlord, entered into another Lease (the "Famous Dave's Lease") with Famous Dave's, as tenant, pursuant to which Famous Dave's agreed to construct a 6,600 square foot building to be operated as a restaurant. The Famous Dave's Lease provided that Famous Dave's would pay a fee in the amount of $112,500 to connect to the STP and Collection System.

Due to delays in the establishment of the Sewer District and the construction of the STP and the Collection System to which Carraba's and Famous Dave's would connect, plaintiffs entered into agreements with SCDHS (the "SCDHS Agreements") to permit construction of temporary individual conventional subsurface sewage disposal systems ("septic systems") to service the Restaurants until the STP and Collection System were available and the Restaurants could connect to them. SCDHS, in consideration for the temporary septic systems, required the DiCanio Entities to file covenants and restrictions "freezing" the development of other parcels of

land and paying one year of taxes for those parcels pending connection of the Restaurants to the STP.  The SCDHS Agreements further provided that Carrabba's and Famous Dave's would connect to the STP and Collection System within 60 days after they became available, that all temporary septic systems would be discontinued and abandoned at the expense of plaintiffs, that the "frozen" parcels would remain vacant under the present ownership with no transfer of title until the Restaurants were connected, and that no plans to construct any structure would be filed until the Restaurants were connected.

### E.  Approval of the Connection of the Restaurants to the STP

On March 21, 2005, the Sewer Agency adopted Resolution No. 7-2005 authorizing the connection of Famous Dave's and Carrabba's to the STP and Collection System, subject to "the dedication and transfer of the treatment plant and sanitary facilities to the District" and the construction of a sewage collection system.  On November 22, 2005, the Legislature adopted Resolution No. 1140-2005 approving the connection of Famous Dave's and Carrabba's to the STP "once the District has been created and all property transferred to the District," and the County Executive approved the Resolution.

Over two years passed when, after multiple adjournments, the Public Works Committee of the Legislature, on June 17, 2008, adopted two competing resolutions to either adopt a $600 annual sewer rate to be charged by the Sewer District or to dissolve the Sewer District, and discharged the competing resolutions to the full Legislature.  The Legislature did not address either resolution discharged by the Public Works Committee and tabled them indefinitely.

No additional developments regarding the connection of Carrabba's and Famous Dave's to the STP and Collection System occurred until June of 2010 when the County adopted an Amended Operation and Maintenance Budget, which estimated a residential user fee of $1,420

per year for connection to the Sewer District.  At the time this Amended Budget was prepared, residential customers connected to the STP were paying a rate of $220 per year.

### F.  Public Hearing to Adopt Increased Rates or Dissolve the District

On October 12, 2010, the Presiding Officer of the Legislature, at the request of the County Executive, introduced a Resolution calling a public hearing to consider whether it would be in the public interest to rescind Legislative Resolution 1403-2004 by which Sewer District No. 4 – Smithtown Galleria was created.  The County has taken no further action on the proposed Resolution.  Carrabba's and Famous Dave's continue to operate with the temporary septic systems authorized by SCDHS, and the lands required to be removed from development pending connection to the STP and Collection System continue to be "frozen."

### G.  Out-of-District Connection

The County agreed to permit the connection of the Restaurants to the STP and Collection system as so-called "out-of-district connections" and to permit the Restaurants to pay the connection fees of $225,000 to plaintiffs and Avalon.

On October 26, 2011 Jado and the DiCanio Entities' attorney wrote a letter to the attorney for Avalon asking to arrange a meeting between Avalon and DiCanio as soon as possible to discuss payment of the connection fees.  Avalon's attorney wrote back that he had forwarded the letter to Avalon but DiCanio has not received any further written or oral response from Avalon.

### DISCUSSION

### I.    Municipal Defendants' Motion to Dismiss

Municipal Defendants' various arguments for dismissal will be examined in turn below.

### A.    Subject Matter Jurisdiction

Municipal defendants first move to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1). (Defs.' Mem. at 6.) District courts have original jurisdiction of all actions arising under federal law pursuant to 28 U.S.C. § 1331. A case arises under federal law for purposes of 28 U.S.C. § 1331 if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 678 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1 (1983)). Here, the Court has subject matter jurisdiction over plaintiffs' claims alleged pursuant to 42 U.S.C. § 1983, the Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as these claims arise under federal law and the plaintiffs' right to relief necessarily depends on resolution of questions of federal law. Additionally, the Court has jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367, allowing for supplemental jurisdiction over related state law claims.

### B.     *Service of Process*

Municipal defendants next move to dismiss the Complaint pursuant to Rule 12(b)(5) claiming that plaintiffs failed to properly serve the County. (Defs.' Mem. at 11.) In New York, personal service upon a county government such as Suffolk County shall be made by delivering the summons "to the chair or clerk of the board of supervisors, clerk, attorney or treasurer." N.Y. C.P.L.R. 311(a)(4). "[T]his provision is to be given a liberal interpretation." *In re Catherine G. v. Cnty. of Essex*, 307 A.D.2d 446, 447 (3d Dep't 2003) *aff'd as modified*, 3 N.Y.3d 175 (2004); *see also Marine Midland Realty Credit Corp. v. Welbilt Corp.*, 145 A.D.2d 84, 87

(3d Dep't 1989) ("The Court of Appeals has declined to read the statute in a 'narrow and technical manner,' stating instead that the statute should be liberally construed"). "In that regard, service upon a deputy county clerk has been deemed sufficient to obtain jurisdiction over a county." *In re Catherine G.*, 307 A.D.2d at 447; *see also In re Lewin v. Cnty. of Suffolk*, 239 A.D.2d 345, 346 (2d Dep't 1997) ("The motion court properly determined that jurisdiction was obtained over the County by personal service on the Deputy County Clerk").

Here, defendants argue that although plaintiffs made service on the County Clerk on August 15, 2012, "such service was designated as being made only on the Suffolk County Department of Public Works." (Defs.' Mem. in Supp. at 11.) Plaintiffs, however, attach to their memorandum of law the "Affidavits of Personal Service on each of the five County defendants, together with Acknowledgements of Service by the Chief Deputy County Clerk of such service," demonstrating that plaintiffs did in fact designate service upon all five municipal defendants. (Pls.' Opp'n at 10.) Accordingly, the Court will not dismiss the Complaint for improper service.

### C. Takings Clause

Municipal Defendants move pursuant to Rule 12(b)(6) to dismiss plaintiffs' first cause of action alleging that Municipal defendants violated the Takings Clause of the Fifth Amendment.

#### 1. Standard of Dismissal Under 12(b)(6)

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In recent years, the Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) that "a complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (*citing Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent

with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Id.* at 678 (quoting and citing Twombly, 550 U.S. at 556–57) (internal citations omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

### 2. *Plaintiffs' Takings Claim*

Plaintiffs claim that the Municipal defendants violated the Takings Clause of the Fifth Amendment by freezing certain parcels of land pursuant to the agreement creating the temporary sewer systems to service the Restaurants. "The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not be taken for public use, without just compensation." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005) (internal citations and quotation marks omitted). Although initially the application of this rule was limited to instances where the government took physical control of another's property, "[b]eginning with [*Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922),] the Court recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster – and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Id.* at 537. Supreme Court precedent indicates that two categories of regulatory action "will be deemed *per se* takings for Fifth Amendment purposes." *Id.* at 538. First, "where government requires an owner to suffer a permanent physical invasion of her property – however minor – it must provide just compensation. *Id.* (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) (state law requiring landlords to permit cable companies to install cable facilities in apartment building effected a taking)). Second, "regulations that completely deprive an owner of '*all* economically

beneficial use[s]' of her property" require just compensation.  *Id*. (citing *Lucas v. South Carolina Coastal Counsel*, 505 U.S. 1003 (1992)).  "Outside of these two relatively narrow categories . . . regulatory takings challenges are governed by the standards set forth in [*Penn Central Trans. Co. v. New York City*, 438 U.S. 104 (1978)]."  *Id*.  In *Penn Central*, the Court "identified several factors" that courts should apply in analyzing whether a regulatory taking has occurred including "the economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with the distinct investment-backed expectations" as well as "the character of the governmental action – for instance whether it amounts to a physical invasion or instead merely affects property interests through some public program adjusting benefits and burdens of economic life to promote the common good."  *Id*. at 538-39 (internal citations and quotation marks omitted).

Here, plaintiffs claim that the "freezing" of their land "for an indefinite period of time deprived the lands of all economically viable use and thereby constituted a regulatory taking." (Compl. ¶ 55.)  According to defendants, however, their actions did not amount to a taking because the plaintiffs consented to the "freezing" of the property and the freezing did not occur "by reason of the enactment of a zoning ordinance, county law, or stringent contractual provision."  (Defs.' Mem. in Supp. at 16.)  Plaintiffs respond that even though they consented to the freezing of development, they had no reason to believe that "the connection of the two restaurants to the STP and the consequent 'unfreezing' of the collateral parcels would take ten years to date and be converted to a permanent moratorium on the development of the 'frozen' collateral parcels."  (Pls.' Mem. in Opp'n at 22.)  Plaintiffs, however, do not address the portion of defendants' argument directed at the fact that the alleged taking resulted from plaintiffs' agreement with the SCDHS and not from any law or ordinance.  Plaintiffs have not offered, nor

is the Court aware of, any cases in this circuit recognizing the existence of a taking pursuant to a voluntary contract with a county agency. As a result, plaintiffs' claim is dismissed.

### D.    *Substantive Due Process*[2]

In the Complaint, plaintiffs allege two substantive due process claims. First, plaintiffs claim that "[t]he actions by the municipal defendants requiring plaintiffs to construct temporary septic systems and the Collection System to enable Jado's 2 Restaurants to connect to the STP and to prepare and procure all the necessary paperwork, certifications, bills of sale, and title policies to effect dedication of the Collection System to the Sewer District, and then refusing to permit such connection indefinitely and for a period now exceeding seven years, were so oppressive, irrational, arbitrary and capricious as to constitute a deprivation of substantive due process under the Fourteenth Amendment to the United States Constitution." (Compl. ¶ 59.) Second, plaintiffs claim that "[t]he continuing failure of the municipal defendants to dissolve the Sewer District, return the land on which the STP is built to private ownership, and permit the connection of Jado's 2 Restaurants to the STP, thereby depriving plaintiff - Jado Associates, LLC of the connection fees of $225,000 payable by Carrabba's and Famous Dave's to which it had a legitimate claim of entitlement, were so oppressive, irrational, arbitrary and capricious as to constitute a deprivation of substantive due process." (Compl. ¶ 65).

"To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the

---

[2] Plaintiffs' fifth claim for relief alleges a violation of 42 U.S.C. § 1983. (Compl. ¶ 67.) However, "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere. " *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Accordingly the Court will not address the Section 1983 claim separately from the substantive and procedural due process claims discussed at parts I.D. and I.E. of this opinion.

contemporary conscience.'" *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). "To satisfy this standard, a plaintiff must show that the government decision it challenges 'was arbitrary or irrational or motivated by bad faith.'" *Soundview Assocs. v. Town of Riverhead*, 893 F. Supp. 2d 416, 431 (E.D.N.Y. 2012) (quoting *Rosa R. v. Connelly,* 889 F.2d 435, 439 (2d Cir. 1989)).

Regardless of whether plaintiffs have alleged a protected property right, the Complaint does not support a plausible claim that defendants' actions were arbitrary or capricious. If anything, the allegations in the Complaint regarding the various budget proposals demonstrating increased sewer rates implies that the government's delay in establishing the Sewer District resulted from concern about a substantial increase in sewer rates from the rates existing under private ownership. That the Presiding Officer of the Legislature introduced a Resolution calling for a public hearing to consider whether to substantially raise the sewer rate to $1,420 per year was in the "public interest" further demonstrates the government's concern. (Compl. ¶ 43.) Furthermore, although the Court recognizes that the resolution was tabled for an extended period of time, plaintiffs do not plead any facts suggesting that the legislature acted in bad faith or arbitrarily. As a result, plaintiffs' substantive due process claim is dismissed.

### E.     *Procedural Due Process*

Plaintiffs claim that "[b]y failing to call the public hearing requested on October 12, 2010 by the Presiding Officer of the Legislature and the County Executive . . . the County has deprived and continues to deprive plaintiffs of procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution." (Compl. ¶ 62.)

In order to prevail on a Fourteenth Amendment procedural due process claim pursuant to 42 U.S.C. § 1983, "the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process." *Rehman v. State Univ. of N.Y. at Stony Brook*, 596 F. Supp. 2d 643, 656 (E.D.N.Y. 2009) (citing *McMenemy v. City of Rochester,* 241 F.3d 279, 285–86 (2d Cir. 2001)). The defendants do not challenge whether plaintiffs possess a protected liberty or property interest, but rather they contend that an "Article 78 proceeding in state court is an adequate post deprivation procedure under the Due Process Clause" and that plaintiffs' failure to pursue and Article 78 proceeding now deprives them of a procedural due process claim. (Defs.' Mem. in Supp at 19.)

"Generally, due process requires that a state afford persons some kind of hearing prior to depriving them of a liberty or property interest." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (internal citations and quotation marks omitted). However, "[w]here a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding," of which an Article 78 proceeding will suffice. *Id*. (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)). Still, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *HANAC v. City of New York*, 101 F. 3d 877, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)). For example, in *Kraebel v. New York City Dep't of Housing Preservation and Dev*., 959 F.2d 395, 404 (1992), the Second Circuit held that since plaintiff attacked "established state procedures that cause[d] the delays and burdens which deprive[d] her of her property . . . the mere availability of redress in state court [did not satisfy plaintiff's] right to due process."

Here, plaintiffs have plead facts alleging that a procedural due process violation resulted from "established state procedures," rather than random and unauthorized acts. Specifically, plaintiffs challenge the Legislature's failure to call the public hearing and continued tabling of the Resolution. The Complaint does not allege that the Legislature did not have the authority to table the resolutions, but rather that plaintiff suffered a property deprivation due to "the state system itself," here, the system through which the Legislature proposes and considers resolutions. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982). As a result, the Complaint plausibly alleges that an Article 78 proceeding would not suffice to protect plaintiffs' due process rights. Accordingly, defendants' motion to dismiss is denied with respect to plaintiffs' procedural due process claim.[3]

### F. Notice-of-Claim Provision

Finally, defendants move to dismiss plaintiffs' state law claims for failure to file a notice-of-claim under County Law § 52, requiring that a plaintiff asserting claims against a county file a notice of claim within ninety days of when the claim arose. (Defs.' Mem. at 8-9.) As plaintiffs correctly note, however, the only state law claim asserted against the County is Count Six, requesting that the Court direct the Restaurants to pay Jado the sewer connection fees provided for in their leases. As mentioned above, the Restaurants have been dismissed from this action, purportedly because they have accepted liability for the connection fees and agreed to pay them to whomever the Court directs. (Pls.' Mem. in Opp'n at 2, n.2.) According to the parties, the

---

[3] Defendants' statute of limitations argument does not compel dismissal of plaintiffs' procedural due process claim. The parties consent that the applicable statute of limitations for plaintiffs' § 1983 claims is three years. Since plaintiffs filed their Complaint on June 15, 2012, any potential claims against defendants for an action under § 1983 would have had to accrue on or after June 15, 2009. Since the Legislature's tabling of the Resolution occurred after June 15, 2009, however, plaintiffs' procedural due process claim is not barred by the statute of limitations.

plaintiffs "sought approval by the County to connect the Restaurants to the STP with the out of district connection fees to be paid to Plaintiffs," but the County instead required that plaintiffs and Avalon reach an agreement "as to how the fees were to be allocated between them." (Defs.' Mem. in Supp. at 6; Compl. ¶ 48.) According to plaintiffs, however, Avalon has not cooperated in determining an allocation of the fees.

Plaintiffs claim they were not required to file a notice of claim because "[w]hile the Sixth Claim for recovery of connection fees is ostensibly pleaded against all defendants, the relief requested . . . is directed only against Avalon and Jado's Two Restaurants . . . and is grounded upon contractual claims, not upon tort claims." (Pls.' Mem. in Opp'n at 11.) Even assuming that plaintiffs were not required to file a notice of claim, in order for plaintiffs' claim to survive, plaintiffs must have stated a claim in accordance with Rule 8 requiring a short and plain statement of the claim showing that the plaintiff is entitled to relief. Here, however, plaintiffs have not stated any relief they are entitled to from the County based on the leases between Jado and the Restaurants. As plaintiffs concede, this claim does not request any monetary relief from the County. It solely seeks that the Restaurants pay to Jado the connection fees provided for in their leases. Moreover, plaintiffs have not requested any declaratory relief regarding the County relating to this claim. Since plaintiffs have not stated the basis for their claim against the County or sought any relief regarding the County, the claim cannot stand. Accordingly, the Court dismisses this claim against the County, though it grants plaintiffs leave to re-plead in accordance with the terms below.

## II.     Avalon's Motion to Dismiss

### A.     Sixth Cause of Action for Recovery of Connection Fees

As described above, plaintiffs' sixth cause of action asks that the Court direct the Restaurants to pay Jado the sewer connection fees provided for in their respective leases, namely $112,500 each. Avalon argues that this claim should be dismissed against it because it "cannot be bound by a Lease to which it was not a party." (Avalon's Mem. in Supp. at 5.) Plaintiffs claim, however, that Avalon is a proper defendant because Avalon and Jado "both have colorable claims to the connection fees and [the county defendants] refuse to consummate the connections until Jado and Avalon agree on entitlement to the connection fees." (Pls.' Mem. in Opp'n at 14.) Moreover, plaintiffs claim that the County defendants have established "privity [of contract] by their refusal to pay connection fees to Jado or Avalon until they both agree on how the connection fees should be distributed." (*Id*.)

As discussed previously, the sixth cause of action seeks to recover the connection fees from the Restaurants. Plaintiffs allege via Exhibit G to the Complaint that Avalon has a claim to the connection fees based on the 1996 Agreement between Avalon and DiCanio entities that authorized Avalon to enter into connection agreements with the land developers of Phases I through VI. As this claim is pleaded, however, it requests relief solely from the Restaurants based on their leases. Similar to the discussion above regarding the County, it is unclear to the Court what if any relief the plaintiffs are requesting regarding Avalon and the basis for any claim against Avalon. As a result, the Court dismisses this claim against Avalon, though plaintiffs are entitled to re-plead in accordance with the terms below.

**B.** **Seventh Cause of Action for Breach of Contract and Eighth Claim for Unjust Enrichment**

Plaintiffs' Seventh Claim alleges that Avalon breached the Land Transfer Agreement when "[n]otwithstanding that it agreed to forego any entitlement to sewer connection fees . . . for all phases of the development to be served by the STP other than its own Phase I and had no

authority from the County or any of its agencies to collect connection fees under the 1990 Construction Agreement or any subsequent agreement, Avalon collected sewer connection fees from three DiCanio Entities amounting to $135,886.50." Exhibit G to the Complaint states that the breach of contract claim is comprised of three connection fees that Avalon collected pursuant to STP connection agreements relating to the connection of CVS, Kinder Care, and thirteen single-family homes to the STP. According to Exhibit G, the three payments were made upon execution of the three agreements on November 30, 1998, November 27, 1999, and May 1, 2001.

As defendant Avalon states, the statute of limitations on a breach of contract claim is six years and the cause of action accrues at the time of the breach. According to defendant, since the breaches occurred on the dates that Avalon collected the connection fees, each over six years from the commencement of this action, plaintiffs' claim is barred by the statute of limitations. Plaintiffs do not contest the six year statute of limitation period asserted by defendant, but assert that the statute of limitations has not begun to run because "all of the factual circumstances necessary to establish a right of action" have not occurred since the County defendants have not signed or approved the 1996 Construction Agreement upon which Avalon bases its right to collect connection fees. (Pls.' Mem. in Opp'n at 18.) This argument has no merit, however, since plaintiffs' claim is based on the Land transfer agreement and once Avalon allegedly breached the Land Transfer Agreement, all of the necessary factual circumstances to establish plaintiffs' right of action had occurred. Moreover, contrary to plaintiffs' assertion, the doctrine of continuing wrongs does not aid plaintiffs as none of the alleged wrongs occurred within the statute of limitations. Finally, plaintiffs' equitable estoppel argument fails as they have not plead sufficient facts to plausibly claim that they were prevented from filing this action within the

applicable statute of limitations due to reasonable reliance on the deception, fraud, or misrepresentation of Avalon. As a result, plaintiffs' breach of contract claim is dismissed.

Plaintiffs' Eighth cause of action asserts that Avalon has been unjustly enriched through its collection of the connection fees in the amount of $135,886.50. According to defendants, the statute of limitations on an unjust enrichment claim is six years running from the date that Avalon received the payments. Avalon argues that since it collected all of the fees at issue over six years prior to commencement of the action, plaintiffs' unjust enrichment claims are barred. Plaintiffs do not offer a response to this argument.

Under New York law, the statute of limitations applicable to an unjust enrichment claim is six years where plaintiff seeks an equitable remedy, and three years where plaintiff seeks monetary damages. *See Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013). The limitations period begins to run "upon the occurrence of the wrongful act giving rise to a duty of restitution." *Id.* (internal citations and quotation marks omitted.) Here, the limitations period began to run when Avalon collected the connection fees. Even if plaintiffs' claim seeking a refund of the connection fees to the DiCanio Entities were characterized as a claim for equitable relief, as noted above, each of the collections occurred over six years prior to the commencement of the action. As a result, plaintiffs' unjust enrichment claim is dismissed.

## *CONCLUSION*

For the reasons set forth above, Municipal defendants' motion to dismiss is granted in part and denied in part. Additionally, Avalon's motion to dismiss is granted. To the extent plaintiffs wish to re-plead their Fifth Amendment claim, substantive due process claims, and sixth cause of action, they are directed to file an amended complaint within thirty days of this Order.

**SO ORDERED.**


Dated: Central Islip, New York
        June 30, 2014

_____/s/_____
Denis R. Hurley